By the Court.—Curtis, J.
The boat - in question remained in this condition about three weeks, when at half-past eleven o’clock one night, at pretty nearly high water, it drifted in the ice about two miles down the river, floating back with the return tide to within a few rods of its. former position, and went ashore, the bow going up. on the ice, stone or some obstruction, and another boat sinking under her stern. The result was, when the tide fell, , the boat in question (“ George R. Hale ”) broke in two in the middle, and her stern broke, off, leaving but one tier of bales out at high 'water. Most of the hay on deck floated off. The other boats ultimately completed the trip to Washington. The channel of the river was open during the time the boats were ashore, but there was considerable floating ice in the river. The cargo . was injured and damaged from contact with the water to more than half its value. After the boat broke up and was sunk the last time, the plaintiffs abandoned the cargo to the defendants, and claimed for a total loss.
The defendants, by answer, set up they were exonerated from liability by reason of the following clause in the insurance policy :
“It is understood and agreed that if any boats, the cargo of which is covered by this policy, are prevented or detained by ice or the closing of navigation, from terminating the trip, then, in such case, this policy shall cease to attach upon such cargo, and this Company shall return the premium for the unexpired portion of said trip.”.
The cause was tried .before the Hon. Samuel Jones, at the May Term in" 1871, and a verdict rendered for the plaintiff for the full amount claimed, by direction of the court, on the ground that the stress of weather, by driving the vessel ashore, was the primary cause of the loss. To this direction the defendants’ counsel excepted. The case comes before this court on appeal from the judgment entered on the verdict.
John C. Dimmick, for appellants.
R. H. Underhill, for respondents.
It is to be observed, in construing this policy, that it contains a provision that the vessel may, in her voyage, ‘ proceed and sail to, touch and stay, at any port or places, if thereunto obliged by stress of weather or other unavoidable accident, without prejudice to this insurance.” The contract of insurance seems to be one, that courts, without indulging in niceties, seek to administer justice upon according to the fair interpretation of the intention of the parties. Although it is well settled that the insurer’s liability is to be measured, by the rules causa próxima non remota spectatur, yet its application practically has not been unattended with *234 difficulties. There have been different definitions, more or less stringent, of the term proximate cause. A just expositiou of the rule is, that all the consequences naturally flowing from the peril insured against, or incident thereto, are properly attributable to the peril itself (Peters v. Warren Ins. Co., 14 Peters, 99: Parsons on Marine Ins. 555; Magoun v. N. E. Ins. Co., 1 Story, 164).
In the present case the vessel had liberty by the terms of the policy, “to stay at any ports or places, if thereunto obliged by stress of weather, or other unavoidable accident, without prejudice to this insurance.” Consequently no prejudice attaches to the plaintiff’s claim by reason of the vessel staying where it first went ashore, so long as it was obliged to do so by stress of weather, or the water freezing about it on the flats, or other unavoidable accident. The freezing in seems to come under the provisions both of stress of weather, and unavoidable accident. The vessel was driven ashore by reason of a peril insured against, and staid there under precisely the circumstances that the policy provides she might stay without prejudice to the insurance. After some days she floated in the ice in a high tide, and moved some two miles, it is said, and when the tide receded, was deposited stranded within a few rods of her former position, and then broke in two. It does not appear that after the first storm she ever got off from the shoals into the river channel, or in any way resumed her trip. This was the completion of the loss. It cannot justly be held that this moving of the position of the vessel on the shoal by the tide, changed or affected the provision in the policy which we have just considered. She went ashore, with loss of roof and part of cargo and leaking, in the first instance, a peril insured against. She staid there under the very circumstances under which the policy provides she might stay without prejudice to the insurance, and *235 while there, incapable to perform the voyage, and at no time ever delivered from the original peril, was virtually destroyed.
It would be making an over-nice distinction to say that the gale of wind that first stranded the vessel was not the proximate cause of the loss. It drove her from her course, out of the channel of the river, and it was the original and effective cause of her incapacity to complete the voyage. She was never delivered from the restraint and loss occasioned by this peril, so great to vessels of her helpless class, and to hold that it was causa remota, would be to negative the intentions of the parties and to depart from a just interpretation of the policy.
The earliest case where this distinction came up for consideration, and is relied upon by the appellants, is that of Livie v. Janson, 12 East, 648. An American vessel, warranted free from American condemnation, went ashore on Governor’s Island, when clandestinely leaving" New York in the night, to avoid the embargo. In the morning she was seized by the authorities and condemned for violation of the embargo. It was held that the assured could have no claim for indemnity where there is ultimately no damage to him from any peril insured against. In the case of Hahn v. Corbett, 2 Bingham, 205, where goods were insured in a ship warranted free from capture and seizure, and the ship was stranded on a shoal, within a few miles of the port of destination, disabled from proceeding, and lost, and while she lay in the sand, was seized and the goods confiscated, it was held to be a loss of the goods by the perils of the sea. Burroughs, J., in his opinion, says, “ that the causa próxima of the loss of the goods, is the loss of the ship,” and he draws a distinction between that case and that of Livie v. Jansen, where he says, “ the loss was virtually occasioned by her breaking the embargo.”
*236 Applying the- principle to be deduced from these cases, and considering what actually occasioned the loss of the hay on board of the canal boat, which was intact the gale that stranded her, a peril insured against, the insurer is entitled to recover.
The judgment should be affirmed with costs.